IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHASE D. FOSTER,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )          1:25-cv-150
                                    )
J.B. HUNT TRANSPORT, INC.,          )
and CLINT JUSTIN RATLIFF,           )
                                    )
          Defendants.               )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is Defendants' Motion for Partial Summary Judgment, (Doc. 18). For the reasons stated herein, Defendants' motion will be granted.

## I.   FACTUAL BACKGROUND

On the morning of September 20, 2022, Plaintiff's car and Defendant Clint Justin Ratliff's truck collided on Interstate 40 in Orange County, North Carolina. (Doc. 3 ¶¶ 4–11.) Plaintiff was driving westbound to attend class at Alamance Community College, (id. ¶ 6), and Defendant Ratliff was hauling a trailer overnight from East Stroudsburg, Pennsylvania to Charlotte,

North Carolina, (Doc. 25-8 at 3).[1] At the time of the accident, Plaintiff was driving in the middle-right lane of a four-lane stretch of Interstate 40. (Doc. 25-5 at 4.) According to Dana Edwards, another driver who witnessed the collision from the far-right lane, Plaintiff was driving approximately the speed limit of sixty-five miles per hour. (Id. at 4-5.)

Defendant Ratliff recalls driving in the middle-left lane and merging to take the next exit for a truck stop. (Doc. 19-2 at 5.) Before merging, he turned on his right turn signal, checked his mirrors, and checked his blind spot sensor. (Doc. 19-3 ¶¶ 6-9.) Defendant Ratliff believed the "path seemed clear for [him] to safely change lanes," and he started merging into the next lane. (Id. ¶ 10.) After feeling "something collide with the rear of the tractor trailer," he recalls driving to the shoulder area and coming to a stop. (Id. ¶¶ 11-12.)

Dana Edwards provides a different account of the accident. According to Edwards, Defendant Ratliff was driving in the far-left lane. (Doc. 25-5 at 3.) Defendant Ratliff, without using his turn signal, "jerked the wheel from the left lane to the far right." (Doc. 19-4 at 8, 14.) Edwards then "slammed on [his]

---

[1] All citations in this Memorandum Opinion and Order to documents filed with this court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

brakes" but Plaintiff was unable to avoid the collision. (Id. at 11.) "[A]t the time," Edwards recalls believing that Defendant Ratliff's sudden movements were because "he was going to miss the weigh station" that "was right there." (Id. at 7.)

Following the accident, Defendant Ratliff exited the truck and began recording from his phone. (Doc. 25-2 at 16.) Defendant Ratliff and Edwards debated the cause of the accident while Plaintiff exited from what remained of the driver's side of his car to the passenger seat. (Doc. 25-4 at 5.) As Plaintiff exits the car from the passenger side, he falls to the ground and loses consciousness while Defendant Ratliff and Edwards continue to argue. (Id.) Plaintiff was eventually taken to the hospital, where he was treated for a tibial plateau fracture to his right knee. (Doc. 3 ¶ 28.) Plaintiff continues to suffer knee pain, and according to the Complaint, remains unable to walk without a limp. (Id. ¶ 30.)

## II.  PROCEDURAL HISTORY

On January 29, 2025, Plaintiff filed his personal injury claims in state court. (Doc. 1 at 1.) On February 27, 2025, Defendants J.B. Hunt Transport, Inc. ("J.B. Hunt") and Clint Justin Ratliff removed the action to this court on the basis of diversity. (Doc. 1.) Defendants answered the complaint, (Doc. 2), and following discovery moved for partial summary judgment

- 3 -

on issue of punitive damages, (Doc. 18). Plaintiff responded to the motion, (Doc. 25), and Defendants replied, (Doc. 27).

Defendants' motion for partial summary judgment is ripe and ready for ruling. A hearing is not necessary to resolve the motion.

## III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby</u>, Inc., 477 U.S. 242, 252 (1986).

"The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." <u>Wai Man Tom v. Hospitality Ventures LLC</u>, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing <u>Celotex Corp.</u>, 477 U.S. at 323). "Once the movant has made this threshold determination, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. . . . Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue." <u>Id.</u> (internal citations omitted). "[C]onclusory

- 4 -

allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Id. (citing Strickler v. Waters, 989 F.2d 1375, 1383 (4th Cir. 1993)).

"[I]n assessing a summary judgment motion, a district court is obliged to consider its 'entire record.'" Sinclair v. Mobile 360, Inc., 417 F. App'x 235, 242 (4th Cir. 2011) (quoting Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994)). Though at summary judgment the court views the evidence presented in the light most favorable to the non-moving party, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Accordingly, "[m]ere unsupported speculation," Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995), and "conclusory allegations or denials, without more" are not sufficient to withstand summary judgment. Wai Man Tom, 980 F.3d at 1037.

## IV. ANALYSIS

Punitive damages are awarded under North Carolina law "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1. A plaintiff must show that "the defendant is liable for compensatory damages," that aggravating conduct of fraud, malice, or willful or wanton conduct existed,

- 5 -

and that such conduct "was present and was related to the injury for which compensatory damages were awarded." Id. § 1D-15; see Lively v. Reid, 20-cv-119, 2022 WL 138691, at *3 (W.D.N.C. Jan. 14, 2022). As Plaintiff identifies, the party seeking punitive damages need not prove these elements through direct evidence, (Doc. 25 at 18–19). See Taylor v. Daniels, 4-cv-404, 2006 WL 8438544, at *2 (E.D.N.C. Mar. 9, 2006). The existence of such elements must, however, be proven by "clear and convincing evidence." N.C. Gen. Stat. § 1D-15(b). Interpreting the punitive damages statute, the North Carolina Supreme Court has recognized that "[e]vidence that is only more than a scintilla cannot as a matter of law satisfy the nonmoving party's threshold statutory burden of clear and convincing evidence." Scarborough v. Dillard's, Inc., 363 N.C. 715, 722, 693 S.E.2d 640, 644 (2009).

Plaintiff contends that Defendant Ratliff acted with willful or wanton conduct.[2] (Doc. 25 at 13–16.) The punitive

_____

[2] In its supporting brief, Defendants argue that Plaintiff's "punitive damages claim against J.B. Hunt fails as a matter of law." (Doc. 19 at 5.) In response, Plaintiff explains that he made no claim against J.B. Hunt for punitive damages. (Doc. 25 at 22.) This court agrees. In his prayer for relief, Plaintiff names "Defendant and JBH" for each request except punitive damages, where he requests that "Plaintiff recover punitive damages from Defendant." (Doc. 3 at 8 (emphasis omitted).) In context, this claim is only brought against Defendant Ratliff, and this court will therefore only consider Defendant Ratliff's conduct in determining the claim for punitive damages. All references to "Defendant" in this Memorandum Opinion refer to Defendant Ratliff.

damages statute defines willful or wanton conduct as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). This statute also states that willful or wanton conduct "means more than gross negligence." Id. North Carolina federal courts have "illuminate[d] the distinction" between gross negligence and willful or wanton conduct by identifying previous articulations of gross negligence and "disregard[ing] any references to the terms 'willful' or 'wanton.'" Justice v. Greyhound Lines, Inc., 16-CV-132, 2018 WL 1570804, at *4 (E.D.N.C. Mar. 30, 2018) "Stripp[ing] such references," courts have recognized that:

> the notion of "gross negligence" that remains is an intentional act of conduct that works a breach of a known duty. Accordingly, willful or wanton conduct is "more" than gross negligence in the sense that willful or wanton conduct requires, in addition to breach of a known duty, an aggravating factor. Indeed, N.C. Gen. Stat. § 1D-5(7) specifies that the pertinent aggravating factor is the state of mind described in the statute as "conscious and intentional disregard of and indifference to the rights and safety of others." In this manner, willful or wanton conduct lies between, on one hand, gross negligence, and, on the other, an intentional tort where the tortfeasor intends injury.

Id. (internal citations omitted). Thus, to sustain a claim for punitive damages under a theory of willful or wanton conduct, Plaintiff must present clear and convincing evidence, N.C. Gen.

- 7 -

Stat. § 1D-15(b), that Defendant Ratliff consciously and intentionally disregarded, and was indifferent to, the rights and safety of others. Id. § 1D-5(7); see Wilson v. Associated Petroleum Carriers, Inc., 21-cv-158, 2023 WL 6120913, at *4 (W.D.N.C. Sep. 18, 2023). Moreover, this aggravating conduct must be "present and . . . related to" Plaintiff's injuries. N.C. Gen. Stat. § 1D-15(a); see Lively, 2022 WL 138691, at *3. Plaintiff need not "prove that the willful and wanton conduct caused" his injuries, but rather that there was "a connection between that conduct and [his] injuries." Everhart v. O'Charley's Inc., 200 N.C. App. 142, 155, 683 S.E.2d 728, 739 (2009).

Plaintiff argues that evidence from before, during, and after the accident precludes summary judgment. Leading up to the accident, Plaintiff explains that Defendant Ratliff "had four prior collisions in the thirty-four-month period preceding the crash at issue." (Doc. 25 at 15.) Because "[t]hree of these collisions were in a commercial motor vehicle," Plaintiff contends that "the crash in this case was not an isolated event in [Ratliff's] driving history. It was part of a pattern." (Id.) Then, on the day of the accident, Plaintiff maintains that Defendant Ratliff was driving in the far-left lane in violation of North Carolina Department of Transportation Ordinance

- 8 -

1059326, "which prohibits a tractor-trailer combination with three or more axles and a combined gross vehicle weight rating ('GVWR') greater than 26,000 pounds from driving in the two leftmost lanes." (Id. at 3.) Because "[w]arning signs for the Truck Lane Restriction were properly posted on I-40," Plaintiff alleges that "[i]t is reasonable to infer that Defendant Ratliff was aware that he was prohibited from driving the Tractor-Trailer in the far-left lane but did so in conscious and reckless disregard of the Truck Lane Ordinance and the safety goals it was designed to protect." (Id. at 14.)

Plaintiff also claims that, immediately before the accident, Defendant Ratliff was speeding and merged right without using his turn signal. (Id.) Then, following the collision, Plaintiff states that Defendant Ratliff "failed to pull his Tractor-Trailer fully off the roadway and was stopped in the far-right lane." (Id.) According to Plaintiff, "Defendant Ratliff wantonly positioned his Tractor-Trailer as an obstruction to the right lane of travel on I-40, creating a dangerous situation for other motorists and for Plaintiff, who was unconscious and unable to move to a safer location on the shoulder of I-40." (Id. at 15.) Finally, "[m]inutes after the collision," Plaintiff contends that "Defendant Ratliff failed to even check on Plaintiff as he laid bleeding and motionless on

- 9 -

the asphalt. Instead of trying to help, Defendant Ratliff argued with Dana Edwards." (Id.)

Viewing this forecasted evidence in the light most favorable to Plaintiff, this court finds that Plaintiff has not presented clear and convincing evidence that Defendant Ratliff acted with conscious and intentional disregard of and indifference to the rights and safety of others. For willful or wanton conduct to exceed gross negligence, Plaintiff must forecast more than mere inadvertence to the safety of others. See George v. Greyhound Lines, Inc., 210 N.C. App. 388, 397, 708 S.E.2d 201, 207 (2011). Instead, the evidence must support that prior to the collision, Defendant operated his vehicle "at a time and under circumstances that made a violent collision between vehicles likely." Marsh v. Trotman, 96 N.C. App. 578, 581, 386 S.E.2d 447, 448 (1989). Then, upon recognizing such circumstances, Defendant must have "deliberated about it, and consciously chose to disregard the safety of other motorists." Justice, 2018 WL 1570804, at *6. Without this nexus, the harmful conduct does not "ar[i]se out of a conscious disregard" to the safety of others but is instead a product of inadvertence or "mere forgetfulness." Taylor, 2006 WL 8438544, at *3 (emphasis omitted).

- 10 -

In this case, Plaintiff has failed to present evidence that supports Defendant Ratliff was aware of Plaintiff's location on Interstate 40 at the time of the accident such that a jury could find that Defendant Ratliff recognized the likelihood of a collision and consciously chose to disregard the safety of others. This case is therefore distinguishable from other North Carolina cases on punitive damages that identified the nexus between a defendant's perception of a created risk and the subsequent refusal to modify behavior. See Phillips v. Dallas Carrier Corporation, 766 F. Supp. 416, 420 (M.D.N.C. 1991) (recognizing that a "truck driver with 15 years of experience" who saw the "non-moving vehicle" and "admitted that he could have stopped safely but did not" precludes summary judgment); Folwell v. Sanchez Hernandez, 1-cv-1061, 2003 WL 21418098, at *10 (M.D.N.C. May 7, 2003) (noting that when the defendant "admitted in her deposition that she saw the stopped school bus, saw that its doors were open, knew that children could be around, and knew that she needed to be careful" the plaintiff established that "a jury could find that, whether or not she now recalls it, [defendant] must have seen the stop sign and simply ignored it"); Marsh, 96 N.C. App. at 580-81, 386 S.E.2d at 448-49 (explaining that the defendant's truck "meandered back and forth across the highway from shoulder to shoulder" for "a

- 11 -

quarter of a mile or more," and because the truck "was in [defendant's] control from the time it first began weaving across the highway from shoulder to shoulder until it again for no apparent reason headed across the highway in front of plaintiff's approaching vehicle," the driver's actions supported "the inference that he so drove in wanton disregard of the rights and safety of those in the car"). Plaintiff has not forecast evidence sufficient to create a genuine issue of material fact that Defendant Ratliff "perceived a possibly dangerous condition and realized that he could take a corrective measure that would lessen the danger." Folwell, 2003 WL 21418098, at *11.

Moreover, had evidence of Defendant Ratliff's knowledge of Plaintiff's location been forecasted, no evidence shows that Defendant "consciously disregarded any possible harms." Phillips, 766 F. Supp. at 420. At trial, Plaintiff can challenge the credibility of Defendant's description that he checked his mirrors and blind-spot sensor prior to merging from the middle-left lane. Such evidence, however, only determines the extent to which Defendant's "actions contributed to the accident." (Doc. 19 at 16.) For willful or wanton conduct, Plaintiff must present clear and convincing evidence that Defendant's conduct "arose out of a conscious disregard for" Plaintiff's safety. Taylor,

2006 WL 8438544, at *3 (emphasis in original). Plaintiff cannot forecast that Defendant was aware of Plaintiff when merging, much less that Defendant consciously disregarded Plaintiff's safety upon recognizing his location relative to Plaintiff's position even if he pulled over from the far-left lane as Plaintiff contends. See Justice, 2018 WL 1570804, at *6. Without any facts connecting Defendant Ratliff's actions to his mental state at the time of the accident, there is no "genuine issue of material fact as to whether Defendant [Ratliff] acted intentionally." Mikos v. Clark, 19-CV-00309, 2020 WL 5549605, at *3 (W.D.N.C. Sep. 16, 2020).

Plaintiff attempts to establish the mental state necessary for conscious and intentional disregard through circumstantial evidence of Defendant Ratliff's conduct prior to the collision, a witness's account of the collision, and Defendant Ratliff's actions after the collision. (Doc. 25 at 18–20.) This court finds Plaintiff's evidence either speculative or not "present and . . . related to" Plaintiff's injuries. N.C. Gen. Stat. § 1D-15(a). Starting with Defendant Ratliff's accident history, Plaintiff contends that Defendant Ratliff's record "is clear and convincing evidence that he knew the likelihood of a collision if he was not careful in operating the Tractor-Trailer." (Doc. 25 at 19.) Plaintiff explains that three of the four collisions

- 13 -

occurring "in the thirty-four-month period preceding the crash at issue" were "in a commercial motor vehicle." (Id. at 15.) In the first accident, Defendant Ratliff was reversing his truck into a Target and scraped his trailer against a roof. (Doc. 27-2 at 9.) In the second accident, Defendant Ratliff's truck rolled back "a couple feet" and hit a yellow pole. (Id. at 7.) In the third accident, Defendant Ratliff was at a different Target and collided with a different stationary object. (Id. at 21.) Finally, Defendant Ratliff was driving his personal vehicle and hit a parked car. (Id. at 8.)

This court disagrees with Plaintiff's characterization of Defendant's accident history as "part of a pattern" whereby "he knew the likelihood of a collision if he was not careful." (Doc. 25 at 15, 19.) Aside from the factual dissimilarities between the prior accidents and the collision in this case, "Plaintiff[] must show that the allegedly aggravating conduct was 'present and related to the injury' giving rise to the punitive damages claim." Lively, 2022 WL 138691, at *5. In Lively, the court found that a defendant's prior DUI convictions lacked "any causal connection" to the accident at hand because the "DUIs happened years before the" accident and the defendant "was not intoxicated at the time of the" accident. Id. Here, a jury has no basis for determining whether Defendant Ratliff's accident

- 14 -

history is extraordinary for commercial truck drivers. Supposing that it is extraordinary, Plaintiff has failed to connect the collision before this court to last-mile parking incidents with stationary objects.

This court agrees with Defendant Ratliff that evidence of his driving history fails to support a claim for punitive damages for reasons similar to Justice. Contrary to Plaintiff's assertion that "[t]here was no evidence that the driver in Justice had a prior history of collisions," (Doc. 25 at 17), Defendant provided in reply the Justice briefing which revealed that the driver also had four accidents. (Doc. 27 at 5 (citing Doc. 27-1 at 5).) With such facts, the court in Justice maintained that the claim for punitive damages could not survive summary judgment because any knowing violation of a duty, in that case the duty to refrain from fatigued driving, did not rise "to the level of 'conscious and intentional disregard of and indifference to the rights and safety of others.'" Justice, 2018 WL 1570804, at *6 (quoting N.C. Gen. Stat. § 1D-5(7)). As such, Plaintiff's evidence of prior accidents is too factually dissimilar to be causally connected to the accident in this case, see Lively, 2022 WL 138691, at *5, and the evidence fails to support that Defendant's driving history created a certain duty to other motorists that Defendant both recognized and chose

- 15 -

to disregard. Justice, 2018 WL 1570804, at *6. This court therefore finds that Defendant Ratliff's accident history fails to support Plaintiff's claim for punitive damages.

Justice is also instructive for Plaintiff's claim that Defendant Ratliff violated the Truck Lane Restriction. Plaintiff explains that the North Carolina Department of Transportation promulgated a regulation prohibiting trucks exceeding 26,000 pounds from driving in the leftmost lanes of certain stretches of highways. (Doc. 25 at 3.) Plaintiff also asserts that the regulation applied to "the two leftmost lanes between the Alamance County line and 0.2 miles east of state road 1120." (Id.) Because Defendant Ratliff "had been driving on I-40 since it merged with Interstate 85, and there were signs posted warning of the application of the Truck Lane Ordinance," Plaintiff contends "it is reasonable to infer that Defendant Ratliff willfully and intentionally disregarded the Truck Lane Restriction and chose to drive in the far-left lane among heavy traffic." (Id. at 21.)

Inferring Defendant Ratliff saw these signs, Plaintiff's claim shows a disregard for the regulation itself. "The violation of a safety statute or regulation does not establish willful conduct per se." George, 210 N.C. App. at 394, 708 S.E.2d at 206. "Instead, there must be sufficient evidence of a

- 16 -

'deliberate purpose not to discharge a duty' imposed by the safety regulation." Id. (quoting Lashlee v. White Consol. Indus., Inc., 144 N.C. App. 684, 694, 548 S.E.2d 821, 827 (2001)). In Justice, the court considered whether the defendant's violation of a rule promulgated under the Federal Motor Vehicle Carrier Act that limited the driving time of a commercial bus driver supported a claim for willful conduct. Justice, 2018 WL 1570804, at *2. The court explained that the driver's mathematical errors in calculating his driving time must not only reflect "a scheme to withhold recording . . . hours," but also that the defendant was "concealing the violation from [employer]" such that the scheme was "accompanied by [defendant's] 'conscious and intentional disregard of and indifference to the rights and safety of' other motorists." Id. at *6 (citation omitted). The court found arguments about this regulation and the employer's internal policies regarding reduced speeds in inclement weather to be "entirely speculative." Id.

Similarly here, the inference that Defendant Ratliff recognized he was driving in violation of the left-lane ordinance, deliberated about the rights of those on Interstate 40, and consciously chose to disregard those rights with

- 17 -

deliberate indifference rests on speculation.[3] Defendant Ratliff

may have been driving in a lane prohibited by the ordinance, but

Plaintiff's evidence does not forecast that Defendant Ratliff's

choice to drive in the prohibited lane arose out of an

indifference to other drivers.

Even if this court were to find that Defendant Ratliff

consciously disregarded the rights of other drivers by

deliberately choosing to violate the ordinance, Plaintiff's

claims still cannot preclude summary judgment because there is

no connection between driving in the left-most lane and the

injuries Plaintiff sustained. Interpreting the punitive damages

statute, the North Carolina Court of Appeals held that a

plaintiff need not "prove that the willful and wanton conduct

caused [plaintiff's] injuries." Everhart, 200 N.C. App. at 155,

683 S.E.2d at 739. The plaintiff "rather was required to prove a

connection between that conduct and her injuries." Id. The court

recognized such a connection when a customer was served by

---

[3] To the extent Plaintiff also claims that Defendant Ratliff
was driving in excess of the speed limit, (see Doc. 25 at 14),
this court finds Plaintiff's argument similarly speculative.
(Cf. Doc. 25-5 at 4-5 (Edwards indicating that Defendant Ratliff
was travelling at "[p]robably about the same" speed as Edwards,
who was "running 70" where the "speed limit's 65").)
Additionally, North Carolina federal courts have recognized that
"[d]riving five miles above the speed limit, even in a
construction zone, is not even close to driving at an 'excessive
speed.'" Wilson, 2023 WL 6120913, at *3.

accident a mixture of water and cleaning solution "that had been used to soak soda nozzles." Id. at 144, 683 S.E.2d at 732. After the plaintiff ingested the mixture, the manager followed restaurant policy and refused to "read the label to learn what first aid steps were necessary to treat ingestion of" the cleaning solution. Id. at 155, 683 S.E.2d at 739.

Because the unread label stated that "the person should not attempt to induce vomiting unless directed to do so by poison control or the doctor," and the plaintiff "was in the bathroom for approximately five minutes trying to make herself throw up" and later "had blisters and sores on her lips and in her mouth, had a sore throat, and experienced nausea, heartburn, indigestion, and reflux for a week," the court found that a connection existed between the failure to investigate and the plaintiff's injuries. Id. Thus, Everhart illustrates a manager's decision to follow company policy and refrain from rendering assistance to an injured customer. The manager was aware of the plaintiff's condition yet chose to avoid reading the cleaning solution's instructions to drink water and not attempt to induce vomiting. From these facts, the court identified the throughline between the manager's decision, informed by the plaintiff's condition, and the plaintiff's injuries.

Such a connection is unsupported in this case, however, because Defendant Ratliff's decision to drive to the left presented no scenario that required a choice affecting Plaintiff's condition. Plaintiff's evidence of Defendant Ratliff driving in violation of the left-lane ordinance is instead similar to the argument rejected by the court in Taylor, where the plaintiff in a truck accident argued that the defendant "intentionally disregarded his employer's rules by taking along his stepson without obtaining permission and obtaining insurance coverage for him." Taylor, 2006 WL 8438544, at *3. The court found this argument "legally irrelevant, as it was not conduct directed at the plaintiff and thus does not 'show that the portion of defendant's conduct which constituted the proximate cause of the accident was willful or wanton.'"[4] Id.

Like the Taylor defendant driving with his stepson, Defendant Ratliff's position on Interstate 40 may have violated certain driving standards. The decision to drive to the left, however, "was not conduct directed at the plaintiff." Id. Defendant Ratliff only directed his conduct towards Plaintiff

---

[4] Taylor was decided before the North Carolina Court of Appeals issued its opinion in Everhart. However, under either a proximate cause standard or a standard requiring a connection between the aggravating conduct and the injuries, the requirement of "conduct directed at the plaintiff" remains relevant to both. Taylor, 2006 WL 8438544, at *3; see N.C. Gen. Stat. § 1D-15(a).

upon his decision to merge. Prior to that point, Defendant Ratliff's position to the left was neither informed by nor directed at Plaintiff. A jury may determine that at the point of merging, Defendant Ratliff should have recognized Plaintiff. That determination is a determination of negligence, not willfulness. Because prior to merging Defendant Ratliff's position to the left did not implicate Plaintiff, this court agrees with Defendant that "[h]is initial lane choice is no more connected to the accident than his decision to start the truck and get on the highway." (Doc. 27 at 11.) Therefore, Plaintiff's evidence of Defendant Ratliff violating the left-lane ordinance is both speculative and unconnected to Plaintiff's injuries and cannot support a claim for willful or wanton conduct.

Plaintiff also contends that Defendant Ratliff's post-collision conduct "evinces a continuation of the same state of mind with which he acted at the time of the collision." (Doc. 25 at 19.) Specifically, Plaintiff asserts that after the collision Defendant Ratliff "wantonly positioned his Tractor-Trailer as an obstruction to the right lane of travel on I-40" and then "used his cell phone to film an encounter that showed his angry and uncaring state of mind." (Id. at 15, 19.) The recording captured an argument with Dana Edwards about the cause of the accident, and Plaintiff argues "the callous way [Defendant] ignored

- 21 -

Plaintiff lying bleeding and unconscious underneath him in order to film an argument with Mr. Edwards" demonstrates how "Defendant Ratliff prioritized his own needs and actions above the safety and well-being of Plaintiff." (Id. at 19-20.)

Defendant Ratliff argues that the post-accident conduct cannot "speak to [his] earlier mental state at the time of the accident." (Doc. 27 at 12.) He asserts that "at no point in this video does [he] make any statements or admissions demonstrating that he disregarded the safety of plaintiff or any other motorist when he made his earlier decision to change lanes." (Id.) According to Defendant Ratliff, "the video rebuts any suggestion that Ratliff's conduct was willful and wanton because, consistent with his testimony in this case, Ratliff was adamant in the video that he performed a safe lane change, after activating his turn signal and after believing he had adequate space to merge." (Id. at 12-13.)

This court finds that Defendant Ratliff's post-accident conduct cannot support a claim for punitive damages. In his response, Plaintiff cites Taylor for the proposition that circumstantial evidence may support a claim for willful or wanton conduct. (Doc. 25 at 18.) Plaintiff states that a "jury may consider all of a defendant's conduct surrounding an automobile accident in determining whether his actions in

causing the collision were willful or wanton . . . ." (Id.
(quoting Taylor, 2006 WL 8438544, at *2).) Plaintiff omits the
second part of the sentence. The court in Taylor finishes the
sentence by stating, "but his failure to stop and render
assistance after the collision, while probative of a driver's
general demeanor toward the safety of other motorists, is itself
legally insufficient to support an award of punitive damages."
Taylor, 2006 WL 8438544, at *2 (emphasis in original).

A jury may be asked at trial to determine whether Defendant
Ratliff stopped in an unsafe position on the highway, (Doc. 25
at 20), whether Defendant Ratliff timely "brought plaintiff a
pillow to try to make him more comfortable while waiting for
medical personnel to arrive," (Doc. 27 at 13), or whether
Defendant Ratliff "ignored Plaintiff" in a "callous way" while
Plaintiff was "bleeding and unconscious underneath [Defendant]
in order to film an argument with Mr. Edwards," (Doc. 25 at 20),
if necessary to the liability claims. For the purposes of
summary judgment, however, these factual determinations, even if
resolved in Plaintiff's favor, are "legally insufficient to
support an award of punitive damages." Taylor, 2006 WL 8438544,
at *2.

Taylor does not establish that all post-collision conduct
is irrelevant. Indeed, "a jury may consider all of a defendant's

- 23 -

conduct surrounding an automobile accident in determining whether his actions in causing the collision were willful or wanton." Id. (emphasis in original). To determine when post-collision conduct supports a claim for willful or wanton conduct, this court finds the difference between Taylor and Mikos instructive. In Taylor, the defendant "failed to stop his vehicle at the scene of the collision, to render assistance to plaintiff, or even to call for medical assistance. Instead, [defendant] left the scene and went on to deliver his load at the Raleigh Home Depot." Id. at *2. Even though the driver "was eventually convicted of hit-and-run," the court found the driver's actions "legally insufficient to support a prima facie case for punitive damages." Id. at *2-4 (explaining that defendant's "failure to stop and render assistance after the collision, while probative of a driver's general demeanor toward the safety of other motorists, is itself legally insufficient to support an award of punitive damages" (emphasis in original)).

In Mikos, the court found the defendant "displayed more than mere inadvertence or even gross negligence" after the collision. Mikos, 2020 WL 5549605, at *3. There, the defendant first rear-ended the plaintiff's vehicle, then he drove around the plaintiff and drove into the plaintiff's car from the right side, then he finally tried to run the plaintiff over with his

- 24 -

vehicle. Id. at *2. The court recognized that the first collision may have been merely inadvertent, but "hitting the [p]laintiff's vehicle a second time, then accelerating and attempting to run the plaintiff over can reasonably be found by the jury to be willful conduct." Id. at *3.

This court disagrees with Plaintiff's application of Mikos to the facts of this case. Plaintiff asserts that the "relevant portion of the Mikos decision involves the defendant's failure to stop after the accident." (Doc. 25 at 20.) Plaintiff argues that this relevant portion parallels the facts of this case, where Defendant Ratliff "stopp[ed] his Tractor-Trailer in a lane of travel on the interstate." (Id.) In both Mikos and Taylor, the defendants drove away from the scene of the accident. Mikos, 2020 WL 5549605, at *3; Taylor, 2006 WL 8438544, at *2. Citing Taylor, the court in Mikos explained that "failure to stop after an accident itself is not sufficient to support punitive damages" but is "probative of a driver's general demeanor toward the safety of other motorists." Id. (quoting Taylor, 2006 WL 8438544, at *2). In other words, what distinguished the hit-and-run in Taylor, where the punitive damages claim did not survive summary judgment, from the hit-and-run in Mikos, where the punitive damages claim survived summary judgment, was the fact that the Mikos defendant drove his vehicle into the plaintiff's

- 25 -

vehicle a second time and then tried to run the plaintiff over. Id.

Plaintiff does not forecast evidence akin to Mikos. In fact, the forecasted evidence falls short of Taylor. Plaintiff attempts to parallel Defendant Ratliff's stopping in the right lane after the collision to a hit-and-run. (Doc. 25 at 15, 20.) Unlike a hit-and-run which may reveal a driver's "intent to place his self interest above [another's] needs," Taylor, 2006 WL 8438544, at *2 (quoting Doe v. Isaacs, 265 Va. 531, 535, 579 S.E.2d 174, 177 (2003)), Defendant Ratliff stopping in a lane of traffic after the collision does not reveal a "general demeanor toward the safety of other motorists." Id. Plaintiff presents no evidence that indicates Defendant Ratliff was aware of the location of Plaintiff's vehicle after the collision, and Defendant Ratliff stated in his deposition that he did not see Plaintiff's vehicle or know that he was "dragging something" until he stopped his vehicle, which he asserted was stopped "over to the side of the road." (Doc. 25-2 at 14.)

Even accepting Plaintiff's proposed parallel to a hit-and-run and inferring that Defendant Ratliff knew where Plaintiff collided with his vehicle before deciding to stop in a lane of traffic, evidence of Defendant Ratliff recording an argument between him and Edwards after the collision could not bridge the

- 26 -

gap from <u>Taylor</u> to <u>Mikos</u>. Unlike the decision to strike a car for the second time and then attempting to run an individual over, the act of recording an argument does not reveal a demeanor of conscious and intentional disregard of and indifference to the rights and safety of other motorists. As Defendant Ratliff states in his reply brief, if anything, the recording demonstrates that "Ratliff was adamant in the video that he performed a safe lane change." (Doc. 27 at 12-13.) Because the facts of this case do not rise to the level of <u>Taylor</u> or <u>Mikos</u>, Plaintiff's post-collision evidence does not prevent summary judgment on the claim for punitive damages.

Plaintiff has therefore failed to present clear and convincing evidence that Defendant Ratliff acted with conscious and intentional disregard of and indifference to the rights and safety of others, and that Defendant's alleged aggravating conduct was present and related to Plaintiff's injuries.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment, (Doc. 18), is **GRANTED.**

This the 8th day of July, 2026.

_____
United States District Judge

- 27 -